Great. All right, uh, Counsel, you may proceed. Thank you, Your Honor. Good morning. First, I'm Mark Coons on behalf of the appellant, the defendant, Mr. Robles, and I'd like to reserve two minutes for rebuttal if necessary. Just to introduce the case, I'd just like to emphasize that it is about a sacred right that was denied to our client because the door to present a fair trial was was denied because the motion in limine to admit a witness that would have reflected on the credibility of one of the victims, and that is basically where we are coming from. Well, Counsel, hold on. If I can just jump in. I thought what happened here was is actually the government filed a motion in limine to exclude the statement of witness gates, not that there was a motion to admit. Am I correct about that? Yes, Your Honor. Sorry for for for expressing it this way, but the government filed a motion in limine and a witness was excluded that was on the combined witness list. Counsel, I mean, to be fair, it was excluded but subject to without prejudice. It could be raised again. I believe the district court left the door open for defense counsel to come back and explain what Mr. Gates would say, why it was relevant, and that defense counsel never did that. Yes, Your Honor. It was it's exactly what you said, but we did respectfully disagree that in this case, the procedure employed by the court because during the hearing of the motion, it was argued and speculated about the reasons of the Fifth Amendment of the potential witness and the procedure in this case should have been that the motion should not be denied, that it should have that the potential witness would have been subpoenaed, and to go to the to the bottom of the reasons of the Fifth Amendment that the potential witness alleged to to take the defense counsel subpoena. Did the defense counsel subpoena him? I mean, the court seemed to invite when it denied when it granted the motion without prejudice, seemed to invite, bring him in. It was an issue of foundation and the court was willing to reconsider if he was brought in. Did were efforts done to do that? According to the record in front of me, it was not done because the defense counsel after the motion denied proceeded with the trial. And to make our point very clear, we think that this speculation that occurred during the hearing was detrimental to our client because it the court and even the counsel at the hearing should not have speculated what happened with the potential witness. They should have seen the importance of the testimony and proceed to not make a decision on the motion because that closed the door. OK, but counsel, I guess I have two points. First, as Judge Collins just said, I don't think there was a final decision. The district court said you can come back and relitigate this, number one. Number two, what is this supposed testimony? I don't think we've ever seen an attorney proffer or anything as to what Mr. Gates would say that could materially help the defense of your client. Yes. To your first question, as it appears to us, the motion was denied with... No, the motion was granted. The motion was granted without prejudice. Sorry, Your Honor. Yes. I mean, yeah, the thing is that from where we're coming from in regard to this procedural issue, we think the denial, I mean, that the potential witness was not allowed during the motion to testify should not have occurred. And the second thing, more important, and it's very great that you raised the issue, is that the factual testimony, what it's all about, to impeach one of the trial witnesses, the alleged victim, because it all revolves about a term of art that he overheard the victims stating that mitigating circumstances, that he heard the victim articulating about that. I think what happened in this case, just the potential witness would have been able to elaborate what he heard because at the hearing, what happened, counsel and the court just looked at the phrase of mitigating circumstances as a trained law professional, not as the potential witness heard it. And that reflected on the credibility of the potential witness. Because what happened, the potential witness was in the family union opposing to our client. And the dynamics, what happened over there could not be evaluated in the abstract at the hearing. Therefore, we think the proper way to handle that matter would have been clearly to postpone the hearing, to subpoena the potential witness and go on the gist, if he had a fifth amendment, which is very important. Or like go on, go into the details about the mitigation circumstances, because certainly it had an effect on the trial. And where we are coming from, it tainted the trial because the witnesses presented at trial were five out of this family union, including the potential witnesses. And since it was basically all circumstantial, that would have been the procedure we think would have been just in this case. So counsel is saying, I mean, now it sounds like you're arguing that defense counsel was ineffective for not subpoenaing these witnesses. But that's not what was briefed in this case. Am I right about that? Yeah. I mean, looking into the brief, we are not getting into what happened after the hearing about the motion. What we say is how the motion was handled was not constitutional because it should not have been decided in this case. The proper procedure would have clearly been to subpoena the potential witnesses at the full hearing, eliminate, and then proceed with the trial. But what prevented defense counsel from subpoenaing the witness? More than that is brief, I can give you no insight about that. But the pure focus, as it appears to us here today, is that they focus on the motion itself. And after it was denied, they proceeded with trial. Did you want to reserve some time? Yes, your honor. It would be great if I can reserve two minutes. But yeah, just to wrap it up, I think the speculation that occurred about the term of art used by a layman, the mitigation circumstances, and the invocation of the Fifth Amendment demanded, in this case, to do justice, a fair hearing that should have occurred within the motion of a limit. And I would like to reserve the two minutes. And thank you for your time. All right, we'll hear from the other side. Thank you. Good morning, your honors. May it please the court, Caitlin Noel, on behalf of the United States. Jay Gates wasn't present on the family camping trip where the defendant sexually abused his girlfriend's 20-year-old cousin and her 13-year-old niece. Jay Gates has no personal knowledge of those events. Nonetheless, the only challenge the defendant makes to his conviction is his contention that the district court abused its discretion by granting, without prejudice, the government's motion in limine to exclude Gates' testimony. This contention fails for two reasons. First, any testimony from Gates would be an admissible hearsay. Gates allegedly overheard CeCe, the 13-year-old victim, and the daughter of Gates' cousin tell an unknown person about some mitigating factors going to her feelings about some of the things that happened, including that she wished her dad was there to protect her. As the district court correctly observed, Gates' proposed testimony relaying these purported statements would be hearsay. The only way that they would come in at trial would be to impeach CeCe, but that would require that her prior statements actually be inconsistent with her trial testimony. The defendant has never explained how the statements allegedly overheard by Gates were inconsistent with anything CeCe said on the stand. If anything, these purported statements actually support or bolster CeCe's description of her abuse at the defendant's hands. The second reason Gates' contention fails is that Gates, or sorry, defendant's contention advised defendant that he would invoke his Fifth Amendment right against self-incrimination if called to testify. As this court stated in Clinger, a defendant may not call a witness if that witness is merely going to be invoking his right, his Fifth Amendment right not to testify. The parties also agree about the procedure that a district court should ordinarily follow when faced with an anticipated invocation. It holds a hearing outside the presence of the jury to probe the scope and validity of a witness's claim. Counsel, do we know what his basis was for invoking the Fifth Amendment? Your Honor, we do not know for sure. We can... Have you talked to agents? Had Gates talked with any federal officials? Yes, Your Honor. The only information that is in the record here about Jay Gates, what he may or may not have heard about this, about the abuse at issue here, comes from the government's motion in limine itself, which describes the factual background of this motion. And the family relationships here can be a little confusing, but essentially Gates was the half-brother of the second victim, victim K.S. Both K.S. and Gates were the cousins of victim C.C., the 13-year-old, of her father. Jay Gates had, at the time of the issues here, been in a dispute with C.C.'s dad about some family heirlooms and the ownership of a family cabin. In September of 2020, so roughly six months before the trial, Gates had texted K.S., victim K.S., so his half-sister, to ask if he could use as leverage for his dispute with C.C.'s father the threat of K.S. not testifying at trial. He then also sent another text saying that he would tell defendant's attorney that he had overheard C.C., and I want to make sure that I get this correct here, that he had heard victim C.C. say something about making up details and that he would easily get a hold of defendant's attorney. So are these things that he told a federal agent? So when he spoke to the federal agent, when the agents learned of these texts and interviewed him, Mr. Gates denied having actually overheard C.C. say she made up the offense, denied saying that C.C. had made a false report, denied that C.C. had exaggerated it. At this point, he explained that he had made those statements because he was trying to get some leverage over C.C.'s father. I'm just starting to figure out, was he under oath when he talked with the agents? Your Honor, the record does not reflect whether that interview occurred under oath, although I believe that if he had made false statements during that interview with the agent, he could have potentially been exposed to criminal prosecution for making false statements. Even if he wasn't under oath? Correct. And certainly, to the extent that any additional information came out about his attempts to influence witness and victim K.S. in her testimony in the case below, he could have potentially been exposed to criminal liability for obstruction of justice. So while the record does not, while we do not have here a hearing where there is an specific exposure that he, that he faced, it seems pretty clear from the record where that could have come from, where that exposure could have come from. And as the, I just want to make two more points about the, the, this, the Fifth Amendment invocation. First, the court has made clear that a hearing outside the scope, outside the presence of the jury, is not mandated. That is not a required practice. In the Clinger case, the court had not held such a hearing and the, this court nonetheless found that there was no abuse of discretion in the exclusion of the witness's testimony. Well, if he had laid a foundation for, and shown diametrically opposed, prior statements would have been recounted. You know, your first ground. Would it then have been proper without any inquiry to grant this, the government's motion just on the Fifth Amendment concern? Well, I think if that had been the case, I don't think that, I still don't think the district court would have abused its discretion here because of the fact that the district court granted the motion without prejudice and specifically invited defendant to bring Gates to court to have this hearing that he is saying should have happened. So, no hearing happened, but that isn't because the court refused to hold one. It's because defendant, for whatever reason, chose not to follow through on that invitation. And the record doesn't reflect why defend, defendant made that choice, but based on the information that we have in the record, it seems like defense counsel most likely made a reasonable strategic decision not to call Mr. Gates because Mr. Gates' testimony would not actually have helped his client. And in fact, a description by a 13-year-old girl of some mitigating circumstances about how she felt about defendant sexually abusing her would appear to, in fact, hurt defendant's case. So, to the extent that we don't have information about the specific questions that Mr. Gates might have invoked in response to, that's because this hearing never happened because defendant chose not to take the court up on its invitation. If the court has no further questions for me, I would urge the panel to affirm. Okay, thank you very much. Thank you. Go ahead. Thank you, Your Honor. Just, first of all, thank you to my esteemed colleague for the remarks. And I just want to highlight two points. First of all, the decision of the court, without prejudice, where we are coming from, we think it was, under the circumstances, inappropriate for the inquiry within the hearing should have been necessary to go to the bottom of the Fifth Amendment invocation of the potential witness. That is very important. And in regard of the evidence standard, I think what my colleague just noted just brings it on point. The potential witness, as in the family union, that is quite complicated with cousins. But like I said in my introduction, five family members, including two alleged victims, were at trial witnesses. It is important to notice that the mitigation, mitigating circumstances that the potential witness articulated in front of the federal agent, that this is sufficient for the court in the moment to see that there was veracity in impact and information about what happened, what the potential witness experienced, and what she told the Mr. Gates. Therefore, the court should have gone to the bottom and continued the inquiry. Speculating about the invocation of the Fifth Amendment, whether obstruction of justice charges or why the potential witness would have done that, that is insufficient. Because due process in this case and all case law that we cited could be distinguished in something that would have been necessary based on the circumstances that we had. The family dynamics, I think, would have been very important to elaborate to determine the Fifth Amendment claims or invocation, which is very important. But without such a hearing, just by the judge and by the lawyers at the hearing were insufficient to go to the bottom. Therefore, we think the whole trial was tainted because the credibility of the essential, one of the victims, the alleged victims, was so important and it would have reflected. And the testimony of Mr. Gates would have been able to reflect on that. And therefore, we kindly ask you to reconsider the trial court's decision and to reverse and vacate the judgment and proceed. Thank you. Thank you very much, counsel. Thank you both. Thank you for your briefing and argument. This matter is submitted.
judges: BYBEE, OWENS, COLLINS